**STUBBS ALDERTON & MARKILES, LLP**
Jeffrey F. Gersh (SBN 87124)
*jgersh@stubbsalderton.com*
Neil Elan (SBN 292002)
*nelan@stubbsalderton.com*
15260 Ventura Blvd., 20th Floor
Sherman Oaks, California 91403
Telephone: (818) 444-4500
Facsimile:  (818) 444-4520

Attorneys for Defendants BODY GLOVE IP
HOLDING, LP and MARQUEE BRANDS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IP GLOBAL INVESTMENTS AMERICA, INC., a California corporation, | Case No.  2:17-CV-06189-ODW (AGRx) |
| Plaintiffs, | **ANSWER TO COMPLAINT AND COUNTERCLAIMS** |
| v. | **REQUEST FOR JURY TRIAL** |
| BODY GLOVE IP HOLDING, LP, a Delaware organization: MARQUEE BRANDS, LLC, a Delaware organization and DOES 1 through 25, Inclusive, | Complaint Filed:  August 21, 2017 |
| Defendants. | |

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

Defendants Body Glove IP Holding, LP, a Delaware organization and Marquee Brands, LLC, a Delaware organization (collectively "Defendants") hereby Answer Plaintiff IP Global Investments America, Inc.'s ("Plaintiff") Complaint and admits, denies and alleges as follows:

## JURISDICTION AND VENUE

1.     In Answer to the allegations contained in Paragraph 1 of the Complaint, these answering Defendants deny that the parties, through their predecessors-in-interest, can stipulate to subject matter jurisdiction.  Further Answering Paragraph 1 of the Complaint, based on Plaintiff's failure to define "License Agreement," these answering Defendants have neither sufficient information nor belief on which to base a response and on that ground, deny, specifically and generally, each and every remaining allegation contained therein.

2.     In Answer to the allegations contained in Paragraph 2 of the Complaint, these answering Defendants admit that they are citizens of Delaware.  Further Answering Paragraph 2 of the Complaint, these answering Defendants have neither sufficient information nor belief on which to base a response and on that ground, deny, specifically and generally, each and every remaining allegation contained therein.

3.     In Answer to the allegations contained in Paragraph 3 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

## THE PARTIES

4.     In Answer to the allegations contained in Paragraph 4 of the Complaint, these answering Defendants have neither sufficient information nor belief on which to base a response and on that ground, deny, specifically and generally, each and every allegation contained therein.

5.     In Answer to the allegations contained in Paragraph 5 of the Complaint, these answering Defendants admit the allegations contained therein.

6.     In Answer to the allegations contained in Paragraph 6 of the Complaint,

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

these answering Defendants admit the allegations contained therein.

7.     In Answer to the allegations contained in Paragraph 7 of the Complaint, these answering Defendants have neither sufficient information nor belief on which to base a response and on that ground, deny, specifically and generally, each and every allegation contained therein.

8.     In Answer to the allegations contained in Paragraph 8 of the Complaint, these answering Defendants have neither sufficient information nor belief on which to base a response and on that ground, deny, specifically and generally, each and every allegation contained therein.

9.     In Answer to the allegations contained in Paragraph 9 of the Complaint, these answering Defendants have neither sufficient information nor belief on which to base a response and on that ground, deny, specifically and generally, each and every allegation contained therein.

## NATURE OF THE CONTROVERSY

10.     In Answer to the allegations contained in Paragraph 10 of the Complaint, these answering Defendants deny, specifically and generally, each and every remaining allegation contained therein.

11.     In Answer to the allegations contained in Paragraph 11 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

12.     In Answer to the allegations contained in Paragraph 12 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

13.     In Answer to the allegations contained in Paragraph 13 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

14.     In Answer to the allegations contained in Paragraph 14 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

contained therein.

15.    In Answer to the allegations contained in Paragraph 15 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

16.    In Answer to the allegations contained in Paragraph 16 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

### GENERAL ALLEGATIONS

17.    In Answer to the allegations contained in Paragraph 17 of the Complaint, these answering Defendants admit the allegations contained therein, based on information and belief.

18.    In Answer to the allegations contained in Paragraph 18 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

19.    In Answer to the allegations contained in Paragraph 19 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein, based on information and belief.

20.    In Answer to the allegations contained in Paragraph 20 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

21.    In Answer to the allegations contained in Paragraph 21 of the Complaint, these answering Defendants deny that the License Agreement "broadly" confers upon Plaintiff exclusive licensing rights.  Further Answering Paragraph 21 of the Complaint, these answering Defendants admit the remaining allegations contained therein, based on information and belief.

22.    In Answer to the allegations contained in Paragraph 22 of the Complaint, these answering Defendants admit that the amendment revised various obligations in the License Agreement.  Further Answering Paragraph 22 of the Complaint, these

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

3

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

answering Defendants deny, specifically and generally, each and every remaining allegation contained therein.

23.    In Answer to the allegations contained in Paragraph 23 of the Complaint, these answering Defendants deny that Body Glove International, LLC is a predecessor-in-interest to Marquee Brands, LLC.   Further Answering Paragraph 23 of the Complaint, these answering Defendants admit the remaining allegations contained therein, based on information and belief.

24.    In Answer to the allegations contained in Paragraph 24 of the Complaint, based on Plaintiff's failure to define "parties" and specify the License Agreement, these answering Defendants deny the allegation that "the parties further amended the License Agreement."   Further Answering Paragraph 24 of the Complaint, these Answering Defendants admit the remaining allegations contained therein, based on information and belief.

25.    In Answer to the allegations contained in Paragraph 25 of the Complaint, based on Plaintiff's failure to define "parties" and specify the License Agreement, these answering Defendants deny each and every allegation contained therein.

26.    In Answer to the allegations contained in Paragraph 26 of the Complaint, these answering Defendants admit the allegations contained therein based on information and belief, but only to the extent that the allegations are not contradicted by, or otherwise inconsistent with, the terms of the operative license agreement(s).

27.    In Answer to the allegations contained in Paragraph 27 of the Complaint, these answering Defendants both admit the 2011 Amendment contains the quoted provisions, and also admit the remaining allegations contained therein based on information and belief, but only to the extent the allegations are not contradicted by, or otherwise inconsistent with, the terms of the operative license agreement(s).

28.    In Answer to the allegations contained in Paragraph 28 of the Complaint, these answering Defendants admit the allegations contained therein, based on information and belief, but only to the extent the allegations are not contradicted by, or

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

otherwise inconsistent with, the terms of the operative license agreement(s).

29.   In Answer to the allegations contained in Paragraph 29 of the Complaint, these answering Defendants admit that the License Agreement contains the quoted language. Further Answering Paragraph 29 of the Complaint, these answering Defendants deny, specifically and generally, each and every remaining allegation contained therein.

30.   In Answer to the allegations contained in Paragraph 30 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein, as the 2011 Amendment speaks for itself.

31.   In Answer to the allegations contained in Paragraph 31 of the Complaint, these answering Defendants admit that the License Agreement contains the quoted language.   Further Answering Paragraph 31 of the Complaint, these answering Defendants deny, specifically and generally, each and every remaining allegation contained therein.

32.   In Answer to the allegations contained in Paragraph 32 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein, based on information and belief.

33.   In Answer to the allegations contained in Paragraph 33 of the Complaint, these answering Defendants admit the allegations contained therein, but only to the extent that they are not contradicted by, or otherwise inconsistent with, other provisions of the operative contracts.

34.   In Answer to the allegations contained in Paragraph 34 of the Complaint, these answering Defendants admit the allegations contained therein.

35.   In Answer to the allegations contained in Paragraph 35 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein, based on information and belief.

36.   In Answer to the allegations contained in Paragraph 36 of the Complaint, these answering Defendants admit the allegations contained therein.

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20ᵀᴴ FLOOR
SHERMAN OAKS, CALIFORNIA 91403

37.    In Answer to the allegations contained in Paragraph 37 of the Complaint, these answering Defendants have neither sufficient information nor belief on which to base a response and on that ground, deny, specifically and generally, each and every allegation contained therein.

38.    In Answer to the allegations contained in Paragraph 38 of the Complaint, these answering Defendants have neither sufficient information nor belief on which to base a response and on that ground, deny, specifically and generally, each and every allegation contained therein.

39.    In Answer to the allegations contained in Paragraph 39 of the Complaint, these answering Defendants have neither sufficient information nor belief on which to base a response and on that ground, deny, specifically and generally, each and every allegation contained therein.

40.    In Answer to the allegations contained in Paragraph 40 of the Complaint, these answering Defendants have neither sufficient information nor belief on which to base a response and on that ground, deny, specifically and generally, each and every allegation contained therein.

41.    In Answer to the allegations contained in Paragraph 41 of the Complaint, these answering Defendants have neither sufficient information nor belief on which to base a response and on that ground, deny, specifically and generally, each and every allegation contained therein.

42.    In Answer to the allegations contained in Paragraph 42 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

43.    In Answer to the allegations contained in Paragraph 43 of the Complaint, these answering Defendants admit the allegations contained therein.

44.    In Answer to the allegations contained in Paragraph 44 of the Complaint, these answering Defendants admit that Marquee, through its lawyers and analysts, reviewed documents and information prior to the acquisition. Further Answering

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20ᵗʰ FLOOR
SHERMAN OAKS, CALIFORNIA 91403

6

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

Paragraph 44 of the Complaint, these answering Defendants deny, specifically and generally, each and every remaining allegation contained therein.

45.   In Answer to the allegations contained in Paragraph 45 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein, based on information and belief.

46.   In Answer to the allegations contained in Paragraph 46 of the Complaint, these answering Defendants deny specifically and generally, each and every allegation contained therein.

47.   In Answer to the allegations contained in Paragraph 47 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

48.   In Answer to the allegations contained in Paragraph 48 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

49.   In Answer to the allegations contained in Paragraph 49 of the Complaint, these answering Defendants admit that a Notice of Default was issued and further admit that the Notice of Default contains the quoted language. Further Answering Paragraph 49 of the Complaint, these answering Defendants deny, specifically and generally, each and every remaining allegation contained therein.

50.   In Answer to the allegations contained in Paragraph 50 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

51.   In Answer to the allegations contained in Paragraph 51 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

52.   In Answer to the allegations contained in Paragraph 52 of the Complaint, these answering Defendants admit that Plaintiff responded on June 2, 2017. Further Answering Paragraph 52 of the Complaint, these answering Defendants deny,

Stubbs Alderton & Markiles, LLP
15260 Ventura Blvd.
20th Floor
Sherman Oaks, California 91403

7

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

specifically and generally, each and every remaining allegation contained therein.

53.   In Answer to the allegations contained in Paragraph 53 of the Complaint, these answering Defendants admit that the letter contains the quoted language.  Further Answering Paragraph 53 of the Complaint, these answering Defendants deny, specifically and generally, each and every remaining allegation contained therein.

54.   In Answer to the allegations contained in Paragraph 54 of the Complaint, these answering Defendants admit that the letter contains the quoted language.  Further Answering Paragraph 54 of the Complaint, these answering Defendants deny, specifically and generally, each and every remaining allegation contained therein.

55.   In Answer to the allegations contained in Paragraph 55 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

56.   In Answer to the allegations contained in Paragraph 56 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

57.   In Answer to the allegations contained in Paragraph 57 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

58.   In Answer to the allegations contained in Paragraph 58 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

59.   In Answer to the allegations contained in Paragraph 59 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

60.   In Answer to the allegations contained in Paragraph 60 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

61.   In Answer to the allegations contained in Paragraph 61 of the Complaint,

STUBBS ALDERTON & MARKILES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

Stubbs Alderton & Markles, LLP
15260 Ventura Blvd.
20th Floor
Sherman Oaks, California 91403

1    these answering Defendants deny, specifically and generally, each and every allegation

2    contained therein.

3       62.    In Answer to the allegations contained in Paragraph 62 of the Complaint,

4    these answering Defendants deny, specifically and generally, each and every allegation

5    contained therein.

6                    **FIRST CLAIM FOR RELIEF**

7          **(Breach of Contract Against All Defendants)**

8       63.    In Answer to the allegations contained in Paragraph 63 of the Complaint,

9    these answering Defendants incorporate the responses to the allegations contained in

10    Paragraphs 1-62, above inclusive, as though fully set forth herein.

11       64.    In Answer to the allegations contained in Paragraph 64 of the Complaint,

12    these answering Defendants deny that Marquee Brands, LLC's predecessor-in-interest

13    entered into the subject License Agreement. Further Answering Paragraph 64 of the

14    Complaint, these answering Defendants deny that Plaintiff has accurately alleged the

15    material terms to the license agreements. Further Answering Paragraph 64 of the

16    Complaint, Defendants admit the allegations contained therein based on information

17    and belief, but only to the extent that they are not contradicted by, or otherwise

18    inconsistent with, the terms of the operative license agreement(s).

19       65.    In Answer to the allegations contained in Paragraph 65 of the Complaint,

20    these answering Defendants deny, specifically and generally, each and every allegation

21    contained therein.

22       66.    In Answer to the allegations contained in Paragraph 66 of the Complaint,

23    these answering Defendants deny, specifically and generally, each and every allegation

24    contained therein.

25       67.    In Answer to the allegations contained in Paragraph 67 of the Complaint,

26    these answering Defendants deny, specifically and generally, each and every allegation

27    contained therein.

28       68.    In Answer to the allegations contained in Paragraph 68 of the Complaint,

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

these answering Defendants deny, specifically and generally, each and every allegation contained therein.

69.   In Answer to the allegations contained in Paragraph 69 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

70.   In Answer to the allegations contained in Paragraph 70 of the Complaint, these answering Defendants admit that the Licensing Agreement provides an attorneys fee provision allowing the prevailing party to recover reasonable fees and costs. Further Answering Paragraph 70 of the Complaint, these answering Defendants deny, specifically and generally, each and every remaining allegation contained therein.

71.   In Answer to the allegations contained in Paragraph 71 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.  Further Answering Paragraph 71 of the Complaint, these answering Defendants deny that Plaintiff is entitled to any of the relief requested in Paragraph 71.

## SECOND CLAIM FOR RELIEF
### (Breach of Implied Covenant of Good Faith and Fair Dealing Against All Defendants)

72.   In Answer to the allegations contained in Paragraph 72 of the Complaint, these answering Defendants incorporate the responses to the allegations contained in Paragraphs 1-71, above inclusive, as though fully set forth herein.

73.   In Answer to the allegations contained in Paragraph 73 of the Complaint, these answering Defendants admit the allegations contained therein, but only to the extent that such allegations are not otherwise inconsistent with California law.

74.   In Answer to the allegations contained in Paragraph 74 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

75.   In Answer to the allegations contained in Paragraph 75 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation

ANSWER TO COMPLAINT AND COUNTERCLAIMS

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

1   contained therein.

2   76.   In Answer to the allegations contained in Paragraph 76 of the Complaint,

3   these answering Defendants deny, specifically and generally, each and every allegation

4   contained therein.

5   77.   In Answer to the allegations contained in Paragraph 77 of the Complaint,

6   these answering Defendants admit that the Licensing Agreement provides an attorneys

7   fee provision allowing the prevailing party to recover reasonable fees and costs.

8   Further Answering Paragraph 77 of the Complaint, these answering Defendants deny,

9   specifically and generally, each and every remaining allegation contained therein.

10   78.   In Answer to the allegations contained in Paragraph 78 of the Complaint,

11   these answering Defendants deny, specifically and generally, each and every allegation

12   contained therein.  These answering Defendants deny that Plaintiff is entitled to any of

13   the relief requested in Paragraph 78.

### THIRD CLAIM FOR RELIEF
### (Intentional Interference with Contractual Relations
### Against Defendant Marquee Brands, and Does 1-25)

17   79.   In Answer to the to the allegations contained in Paragraph 79 of the

18   Complaint, these answering Defendants incorporate the responses to the allegations

19   contained in Paragraphs 1-78, above inclusive, as though fully set forth herein.

20   80.   In Answer to the to the allegations contained in Paragraph 80 of the

21   Complaint, these answering Defendants deny specifically and generally, each and

22   every allegation contained therein.

23   81.   In Answer to the allegations contained in Paragraph 81 of the Complaint,

24   these answering Defendants deny, specifically and generally, each and every allegation

25   contained therein.

26   82.   In Answer to the allegations contained in Paragraph 82 of the Complaint,

27   these answering Defendants deny, specifically and generally, each and every allegation

28   contained therein.

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

83.     In Answer to the allegations contained in Paragraph 83 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

84.     In Answer to the allegations contained in Paragraph 84 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

85.     In Answer to the allegations contained in Paragraph 85 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

86.     In Answer to the allegations contained in Paragraph 86 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.  These answering Defendants deny that Plaintiff is entitled to any of the relief requested in Paragraph 86.

87.     In Answer to the allegations contained in Paragraph 87 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

### FOURTH CLAIM FOR RELIEF
#### (Intentional Interference with Prospective Economic Advantage Against All Defendants)

88.     In Answer to the to the allegations contained in Paragraph 88 of the Complaint, these answering Defendants incorporate the responses to the allegations contained in Paragraphs 1-87, above inclusive, as though fully set forth herein.

89.     In Answer to the allegations contained in Paragraph 89 of the Complaint, these answering Defendants have neither sufficient information nor belief on which to base a response and on that ground, deny, specifically and generally, each and every allegation contained therein.

90.     In Answer to the allegations contained in Paragraph 90 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

contained therein.

91.    In Answer to the allegations contained in Paragraph 91 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

92.    In Answer to the allegations contained in Paragraph 92 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

93.    In Answer to the allegations contained in Paragraph 93 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

94.    In Answer to the allegations contained in Paragraph 94 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

95.    In Answer to the allegations contained in Paragraph 95 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.  These answering Defendants deny that Plaintiff is entitled to any of the relief requested in Paragraph 95.

96.    In Answer to the allegations contained in Paragraph 96 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

## FOURTH CLAIM FOR RELIEF
### (Intentional Interference with Prospective Economic Advantage Against All Defendants)

97.    In Answer to the to the allegations contained in Paragraph 97 of the Complaint, these answering Defendants incorporate the responses to the allegations contained in Paragraphs 1-96, above inclusive, as though fully set forth herein.

98.    In Answer to the allegations contained in Paragraph 98 of the Complaint, these answering Defendants have neither sufficient information nor belief on which to

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

base a response and on that ground, deny, specifically and generally, each and every allegation contained therein.

99.    In Answer to the allegations contained in Paragraph 99 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

100.  In Answer to the allegations contained in Paragraph 100 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

101.  In Answer to the allegations contained in Paragraph 101 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

102.  In Answer to the allegations contained in Paragraph 102 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

103.  In Answer to the allegations contained in Paragraph 103 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

104.  In Answer to the allegations contained in Paragraph 104 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

105.  In Answer to the allegations contained in Paragraph 105 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

### SIXTH CLAIM FOR RELIEF
**(Intentional Interference with Prospective Economic Advantage With Sub-Licensees Against All Defendants)**

106. In Answer to the to the allegations contained in Paragraph 106 of the Complaint, these answering Defendants incorporate the responses to the allegations

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

contained in Paragraphs 1-105, above inclusive, as though fully set forth herein.

107.  In Answer to the allegations contained in Paragraph 107 of the Complaint, these answering Defendants have neither sufficient information nor belief on which to base a response and on that ground, deny, specifically and generally, each and every allegation contained therein.

108.  In Answer to the allegations contained in Paragraph 108 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

109.  In Answer to the allegations contained in Paragraph 109 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

110.  In Answer to the allegations contained in Paragraph 110 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

111.  In Answer to the allegations contained in Paragraph 111 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

112.  In Answer to the allegations contained in Paragraph 112 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

113.  In Answer to the allegations contained in Paragraph 113 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

114.  In Answer to the allegations contained in Paragraph 114 of the Complaint, these answering Defendants deny, specifically and generally, each and every allegation contained therein.

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

STUBBS ALDERTON & MARKILES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

### SEVENTH CLAIM FOR RELIEF
### (Declaratory Relief Against All Defendants)

115. In Answer to the allegations contained in Paragraph 115 of the Complaint, these answering Defendants incorporate the responses to the allegations contained in Paragraphs 1-96, above inclusive, as though fully set forth herein.

116. In Answer to the allegations contained in Paragraph 116 of the Complaint, these answering Defendants admit that Plaintiff is an interested party.  Further Answering Paragraph 116 of the Complaint, these answering Defendants deny, specifically and generally, each and every remaining allegation contained therein.

117. In Answer to the allegations contained in Paragraph 117 of the Complaint, these answering Defendants deny that Plaintiff is entitled to any of the relief requested in Paragraph 117.

### RESPONSE TO PRAYER FOR RELIEF

In response to Plaintiff's Prayer for Relief, Defendants deny that Plaintiff is entitled to injunctive relief of any sort against Defendants; Defendants deny that Plaintiff is entitled to a monetary award of any sort (whether damages, statutory damages, losses, profits, attorneys' fees, interest, costs, or anything else) against Defendants; and Defendants deny that Plaintiff is entitled to any other relief from Defendants.

WHEREFORE, Defendants pray for Judgment as follows:

1.      That Plaintiff take nothing by virtue of its Complaint and be afforded no relief herein;

2.      For Defendants' reasonable attorneys' fees;

3.      For Defendants' costs of suit incurred herein; and

4.      For such other and further relief as the Court deems just and proper.

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

## DEFENDANTS' AFFIRMATIVE DEFENSES

As separate and distinct defenses to the Complaint, and to each and every purported claim therein, Defendants allege as follows:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

1.   The answering Defendants allege that each claim alleged in Plaintiff's Complaint fails to state facts sufficient to constitute a claim against the answering Defendants.

## SECOND AFFIRMATIVE DEFENSE

### (Acquiescence, Estoppel, Laches, Waiver)

2.   Defendants are informed and believe, and on that basis allege, that the Complaint, and each and every purported claim for relief therein, is barred (in whole or in part) because of the doctrines of acquiescence, estoppel, laches, and/or waiver.

## THIRD AFFIRMATIVE DEFENSE

### (Unclean Hands)

3.   Defendants are informed and believe, and on that basis allege, that Plaintiff's Complaint is barred (in whole or in part), by reason of Plaintiff's unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

### (Failure to Perform Conditions Under Contract)

4.   Defendants are informed and believe, and on that basis allege, that Plaintiff's Complaint is barred (in whole or in part) by reason of Plaintiff's failure to fully and fairly perform all necessary conditions under the operative licensing agreements.

## FIFTH AFFIRMATIVE DEFENSE

### (Material Breach)

5.   Defendants are informed and believe, and on that basis allege, that Plaintiff's Complaint is barred (in whole or in part) by reason of Plaintiff's material

breaches of the licensing agreements.

## SIXTH AFFIRMATIVE DEFENSE

### (No Damages)

6.      Defendants are informed and believe, and on that basis, allege that the Complaint, and each and every purported claim for relief therein, is barred (in whole or in part) because Plaintiff has sustained no loss or damages for which a reasonable opportunity for investigation or discovery is likely to provide evidentiary support.

## SEVENTH AFFIRMATIVE DEFENSE

### (Set-Off)

7.      Defendants are informed and believe, and on that basis, allege that to the extent that Plaintiff has any contractual right to damages, Plaintiff's damages must be reduced or eliminated by the damages that Plaintiff owes to Defendants by way of Plaintiff's breaches of the licensing agreements and other actionable conduct.

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

8.      Defendants are informed and believe, and on that basis allege, that if Plaintiff suffered any damages, which Defendants deny, Plaintiff failed to discharge its duty to mitigate damages.

## NINTH AFFIRMATIVE DEFENSE

### (Speculative Damages)

9.      Defendants are informed and believe, and on that basis allege, that if Plaintiff suffered any damages, which Defendants deny, Plaintiff's damages are entirely speculative.

## TENTH AFFIRMATIVE DEFENSE

### (Misuse of Trademark)

10.      Defendants are informed and believe, and on that basis allege, that the Complaint, and each and every purported claim for relief therein, is bared (in whole or in part) by Plaintiff's misuse of the trademarks at issue herein.

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

STUBBS ALDERTON & MARKILES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

## ELEVENTH AFFIRMATIVE DEFENSE

### (Forfeiture of Rights)

11.     Defendants are informed and believe, and on that basis allege, that the Complaint, and each and every purported claim for relief therein, is barred (in whole or in part), based on Plaintiff's forfeiture of its rights under the operative license agreements.

## TWELFTH AFFIRMATIVE DEFENSE

### (Further Affirmative Defenses)

12.     Defendants lack sufficient knowledge or information to form a belief as to whether they may have additional separate or affirmative defenses not stated in this Answer to Complaint. Defendants reserve the right to assert additional separate or affirmative defenses based on further discovery, investigation, or analysis.

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

## COUNTERCLAIMS

Defendant/Counter-Claimant Body Glove IP Holdings, LP ("Body Glove") by and through its attorneys of record, alleges the following Counter-Claims against Plaintiff/Counter-Defendant IP Global Investments America, Inc. ("IP Global"):

## OVERVIEW OF MATTER

1.      Body Glove is a surf, dive, and wake outdoor water sports clothing and product company that has thrived for decades as a leading industry brand. Body Glove is identifiable by its well-known and distinctive hand/palm insignia, a registered trademark with great value and widespread recognition.

2.      Body Glove has an international presence, which it has earned and scaled through crucial and valuable licensee partnerships. To ensure product uniformity, cohesiveness, and a consistent "Body Glove" customer experience, Body Glove's licensees must adhere to certain approval processes and trademark procedures. As the licensees represent the Body Glove brand, Body Glove's licensing program vaunts a high level of professional skill in the research, development, design, promotion, marketing, and manufacture of licensed products; any mistake, misjudgment, or lapse by a licensee can cause profound reputational and dilutional damage to the Body Glove brand.

3.      For approximately thirty years, IP Global and its predecessors-in-interest have licensed Body Glove's proprietary trademarks and intellectual property throughout Asia. Given Asia's large population and expansive geography (and the corresponding need to ensure that customers throughout Asia share a similar Body Glove experience), the licensing agreements between Body Glove and IP Global require that IP Global provide uniform, high quality products and exercise its best efforts to satisfy Body Glove's standards and protocols. In fact, IP Global—a sophisticated and experienced international company that, upon information and belief, specializes in intellectual property and licensing—induced Body Glove to extend (and expand considerably the territorial scope of) the *exclusive* licensing

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

relationship throughout Asia based on its specific acknowledgement that "great value is placed on the Marks and goodwill associated therewith, that the consuming public and the industry now associates the Marks with products of consistently high quality, and that the terms and conditions of this Agreement are necessary and reasonable to assure the consuming public and industry that Licensed Products are of the same consistently high quality…" As it turns out, and unbeknownst to Body Glove, those acknowledgements were empty cajolery.

4.     Recently, Body Glove has discovered that IP Global has systematically failed to live up to its contractual obligations under the parties' license agreements, by, among other actionable conduct, (i) disregarding Body Glove's quality control and approval processes by selling, distributing, and advertising thousands of products throughout Asia that have neither been submitted to Body Glove for approval nor approved for sale by Body Glove; (ii) opening stores throughout Asia that Body Glove has not approved; (iii) allowing sub-licensees (including a publicly traded company in Thailand) to use the Body Glove trademark in their company name, without Body Glove's approval; and (iv) defaulting on its annual minimum performance guarantees to Body Glove, resulting in an outstanding balance of millions of dollars. These violations are more than just contract breaches—they are profound trademark infringements which have dangerously and falsely misled the public to believe that Body Glove has approved all products that IP Glove is selling and promoting in Asia. Upon information and belief, IP Global has maliciously concealed its misconduct for years.

5.     While each breach and infringement is independently actionable (and constitutes grounds to terminate the licensing relationship), IP Global's bold and inexcusable transgressions threaten the Body Glove brand in Asia, and frustrate the very core of the parties' license agreements. In fact, many retailers and other partnership prospects have specifically declined to pursue business opportunities with Body Glove based on stated trademark concerns involving inconsistent Body Glove

21

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

products and stores in Thailand and Malaysia—countries where IP Global has *exclusive* license rights and where Body Glove has obtained photographic evidence of IP Global's sale and advertising of unapproved products and trademark violations. IP Global undermines the very heart of the licensing partnership, and has caused, and continues to cause, real and quantifiable harm to the Body Glove brand.

6. Although Body Glove has sent several notices advising IP Global of its breaches, IP Global continues to deflect, and disingenuously claims ignorance of wrongdoing. However, the photographic evidence of its breaches does not lie.

7. Accordingly, through its Counter-Claims, Body Glove seeks to, *inter alia,* recover the quantifiable monetary damages that IP Global has caused Body Glove to suffer and terminate the license agreements. Body Glove is a global household brand boasting superior quality that its customers have come to expect, *especially* throughout Asia. IP Global is unwilling and/or unable to perform its core obligations, and the licensing partnership simply cannot be resuscitated.

## THE PARTIES AND GENERAL ALLEGATIONS

8. Counter-Claimant Body Glove is, and at all material times was, a limited partnership organized under the laws of the State of Delaware.

9. Counter-Claimant is informed and believes, and thereon alleges, that Counter-Defendant, IP Global is, and at all material times was, a California corporation.

10. Counter-Claimant is informed and believes, and on thereon alleges, that at all times mentioned herein, Doe defendants, and each of them, were the agents, servants and/or employees of each other, aided and abetted each other, were part of the same enterprise, and were acting within the full curse and scope of said agency, enterprise, relationship, and/or employment, and with the full knowledge and consent, either express or implied, of each of the other defendants.

11. At all relevant times, each Counter-Defendant was the agent, partner, joint Venture, or employee of the remaining Counter-Defendants, and was at all

relevant times acting within the scope and purpose of that agency, partnership, joint-venturer, or employment.

12.    All conditions to Counter-Claimant's duties of immediate performance were performed or have occurred, or have been excused, or have been waived.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as (a) Counter-Defendant is a citizen of California; (b) Counter-Claimant is a citizen of Delaware; and (c) the matter in controversy exceeds $75,000, exclusive of costs and interest.

14.    This Court has supplemental jurisdiction under 28 U.S.C. Section 1367 because the Counter-Claimant's counter-claims are related to the claims in the Complaint of IP Global (Plaintiff and Counter-Defendant herein).

15.    Venue is proper in this Court because Counter-Defendant is subject to the personal jurisdiction of the Court, and a substantial part of the events that are the subject of the current action occurred in this judicial district.

## FACTUAL BACKGROUND

16.    Body Glove was founded in 1953, by two brothers, Bill and Bob Meistrell, in Redondo Beach, California.  The Meistrell brothers loved outdoor watersports, and dreamed of starting their own watersports business.  With humble beginnings, the Meistrell brothers borrowed $1,800 from their mother, and purchased an interest in Dive N' Surf, a local watersports shop.  After experimenting with various wetsuit technologies, the Meistrell brothers designed and crafted the first modern wetsuit.  Those wetsuits "fit like a glove", and were accordingly called Body Glove.

17.    After years of hard work, dedication, and strategic partnerships, Body Glove has established itself as a global brand, with a strong and growing international presence.  Critically, Body Glove's success lies in large part in its licensing program.  Through partnerships with licensees across the world, Body Glove has effectively

## ANSWER TO COMPLAINT AND COUNTERCLAIMS

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

scaled global markets and established a strong relationship with communities, customers, retailers, and investors throughout the world.

18.     The core of Body Glove's licensing program is trust, reliability, consistency, and care.  The licensees, which manufacture and sell Body Glove products directly to consumers, hold a powerful role as brand ambassadors.  The licensees interact directly with the customers and are the face of the Body Glove brand.  Body Glove therefore takes great pride in ensuring that its licensees comply with quality-control standards, procedures, and approval processes, in order to ensure that the Body Glove brand remains cohesive, uniform, and high-quality.

19.     While Body Glove has hundreds of licensees and strategic partners across the world, among its most critical, influential, and longstanding is IP Global— which has had rights as an exclusive licensee throughout Asia for approximately thirty years.   However, that licensing relationship is now in question, and what began as a promising licensee has degenerated into one that is delinquent, slipshod, and unreliable.  The Meistrell family operated the Body Glove business based on trust, and often felt that IP Global attempted to take advantage of them in the course of the negotiation and performance of the operative license agreements.  Upon information and belief, IP Global's attempt to exploit the Meistrell's caused a significant deterioration in the licensing relationship.

### The 1988 License Agreement and IP Global's Breach

20.     On April 1, 1988, IP Global, through its predecessor-in-interest, obtained the exclusive license to design, manufacture, advertise, and sell certain defined trademarks of Body Glove and Hand Design throughout Asia, as memorialized in the parties' "License Agreement."   A true and correct copy of the 1988 Licensing Agreement, as amended, is attached hereto as Exhibit A.  The 1988 License Agreement has been amended twice: on December 11, 1989 and on January 1, 2011 ("2011 Amendment").  The License Agreement, as amended, is herein referred to as the "1988 License Agreement." Consistent with Paragraph 26(a) of the

1988 License Agreement, each amendment was memorialized in "a writing signed by the parties."

21.   The 1988 License Agreement grants IP Global exclusive licensing rights in the following Asian territories: Bangladesh, Bhutan, Brunei, Cambodia, China, Hong Kong, India, Indonesia, Kazakhstan, Korea, Laos, Macau, Malaysia, Maldives, Mongolia, Myanmar, Nepal, Philippines, Singapore, Sri Lanka, Taiwan, Thailand, and Vietnam.

22.   Given the expansive territorial breadth of the 1988 License Agreement, and because Asia is the most populous continent, the 1988 License Agreement necessarily contains scrupulous and strict product-approval provisions, and authorizes IP Global to sell, manufacture, advertise, and sub-license *only* Licensed Products that Body Glove specifically approves; as defined in Paragraph 1(c) of the License Agreement, Body Glove "shall determine, *in its sole discretion*, whether a particular product falls within this definition of Licensed Products."  Specifically, the Licensed Products subject to the 1988 License Agreement must comply with certain Body Glove standards, to ensure that all products bearing the Body Glove trademark consistently share the same quality, aesthetic, and functionality.  Without this guarantee, and without the ability to enforce this guarantee, the 1988 License Agreement would be without value and damaging to Body Glove.   For example, if there is a disparity in Body Glove products sold in Malaysia and Thailand (which, as as recently discovered by Body Glove, is the case) then retailers, investors, and strategic partners aware of the product-line incongruity will not have the confidence to pursue opportunities with Body Glove; further, given the competitive retail-market landscape, customers with an unsatisfactory experience with Body Glove will likely identify with other competitors and be irreversibly lost.  Accordingly—no different than any other Body Glove license agreement—the original 1988 Licensing Agreement is replete with various enforceable quality control provisions, including the following:

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

1.   <u>Definitions</u>

   c.  'Licensed Products' shall mean all products. [Body Glove] shall determine, in its sole discretion, whether a particular product falls within this definition of Licensed Products.

*   *   *   *   *

4.   <u>Quality Standards and Inspection</u>

   a.  The parties acknowledge and agree that great value is placed on the Marks and the goodwill associated therewith, that the consuming public and industry now associates the Marks with products of consistently high quality, and that the terms and conditions of this Agreement are necessary and reasonable to ensure the consuming public and the industry that all Licensed Products sold hereunder are of the same consistently high quality as products sold by others who are or may hereafter be licensed to sell any products under the Marks. Accordingly, [Body Glove] may prohibit [IP Global] from using the Marks on any Licensed Products which fail to conform to the reasonable quality and design standards prescribed by [Body Glove].

*   *   *   *   *

   d.  [IP Global] agrees to exercise its best efforts to cooperate with [Body Glove] at all times in the coordination of Body Glove Styles so that they are consistent with the style, image, and quality of other products sold under the Marks.

*   *   *   *   *

   f.  [IP Global] agrees not to sell substandard merchandise under the Marks. Substandard merchandise shall be defined as irregulars, fabric seconds, made-up merchandise and products not meeting the quality standards of [Body Glove].

26

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

14. Use and Display of the Marks

    a. [IP Global] agrees and acknowledges that the presentation and image of the Marks should be uniform and consistent with respect to all products bearing the Marks, including Licensed Products. Accordingly, [IP Global] agrees to use the Markets solely in the manner which [Body Glove] shall, from time to time, in it[sic] sole discretion, specify.

    b. [IP Global] agrees to use in connection with Licensed Products only labels which are provided by or approved in writing by [Body Glove]. With respect to the use by [Body Glove] of other forms of identification for the Marks, includingbut not limited to tags, signs, banners, stationary, order forms, business cards, etc., [IP Global] agrees to obtain the prior written approval of [Body Glove].

23.    Those provisions, among others therein, lie at the core of the 1988 License Agreement. In further recognition of the salience of brand uniformity, Body Glove and IP Global entered into the 2011 Amendment in part to augment and supplement those quality standards, inspection, and approval provisions. To illustrate, in relevant part, the 2011 Amendment provides:

    11)  **Approvals**: Paragraph 4 (Quality Standards and Inspection) is amended as follows:

        a.    The following sentence shall be added to subparagraph a: 'IP GLOBAL agrees that, with respect to all Licensed Products manufactured, licensed, distributed or sold by it, its Operating Agent, or the Sub-Licensees, the same will be of good quality as to workmanship, fit, design and materials used therein.'

        b.    Subparagraph b is redacted from the License Agreement and new subparagraph b shall now read as follows: Prior to showing, presenting, selling,

ANSWER TO COMPLAINT AND COUNTERCLAIMS

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

manufacturing or distributing any Licensed Products, [IP Global] and/or its Operating Agent shall furnish to [Body Glove], at no expense, either a line plan and line art, computer renderings, or one (1) sample of each Licensed Product, including colors and trim for the Licensed Products that [IP Global], its Operating Agent or their Sub-Licensees intend on manufacturing under the Marks. Submissions shall be made pursuant to [Body Glove's] Approval Protocol (a copy of which is attached and of which has been received by [IP Global]). [IP Global] agrees to abide by the Approval Protocol which may be updated and revised by [Body Glove] from time to time provided such updates and revisions are not inconsistent with this License Agreement. The Approval Protocol also applies to basic advertising formats utilized by [IP Global] and its Operating Agent(s) for print advertising, POS advertising and similar uses of the Marks, it being acknowledged that with respect to such advertising by Sub-Licensees and/or retailers, [IP Global's] (and its Operating Agent's) responsibility shall be to conduct reasonable spot-checks for compliance.

c. Subparagraph c shall now read: [Body Glove] shall have the right to exercise quality control over the Licensed Products manufactured, licensed and sold by [IP Global], its Operating Agent or the Sub-Licensees bearing the Marks by making reasonable changes or corrections in said items within ten (1) business days of receipt…

24. Based largely on the above-identified provisions, Body Glove agreed to grant IP Global exclusive licensing rights in additional countries that were not expressly included in the original 1988 License Agreement (i.e., China, India, Cambodia). Otherwise, upon information and belief, Body Glove would not have entered into the January 1, 2011 Amendment, much less agree to extend the territorial breadth of IP Global's exclusive licensing.

ANSWER TO COMPLAINT AND COUNTERCLAIMS

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

25.     However, as Body Glove has recently discovered, IP Global's promises were mere puffery and hollow lip-service; shortly after having received greater exclusivity rights under 2011 Amendment, IP Global quickly changed its tune, becoming indifferent, recalcitrant, and slipshod.

26.     In disregard of its express contractual obligations, IP Global has breached, and continues to breach, the key quality and approval provisions of the 1988 License Agreement, as follows:

a. In violation of Paragraph 4(a)-(b) (under the 2011 Amendment), IP Global sells, manufactures, distributes, and sub-licenses products bearing the Body Glove trademark that Body Glove has not approved.  Upon information and belief, approximately one-half of the products that IP Global manufactures, distributes, and sells throughout Asia that bear the Body Glove trademark have not been submitted to Body Glove for approval and/or approved by Body Glove.  For example, in Malaysia, IP Global is selling collared shirts and belts which contain the Body Glove trademark, without having first obtained product approval from Body Glove. There are other instances of IP Global's breaches of Paragraph 4(a)-(b) (involving, for example, the impermissible sale of unapproved yoga mats and men's activewear) for which IP Global has photographic evidence.

b. In further violation of Paragraph 4(b) (under the 2011 Amendment), Body Glove has posted signage and other advertising materials in various retail stores that Body Glove has not been approved.  In 2017, Body Glove received only one signage approval, for a shopping bag. Yet, as Body Glove recently discovered, there are hundreds, if not thousands, of similar signs and promotional materials that IP Global has posted in various

29

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

stores in Asia without Body Glove's approval.

c.  In violation of Paragraph 4(b) (under the 2011 Amendment), IP Global has used photography, images, print advertising, and other intellectual property of Body Glove for which it does not have a license and which Body Glove has not approved.  IP Global has even acknowledged as such in email correspondence with Body Glove.

d.  In violation of Paragraph 4(b) (under the 2011 Amendment), Body Glove has promoted products and images of products on social media, including Instagram, without the required approval. One such violation occurred on May 25, 2017, when IP Global posted six images of various Body Glove accessories on Instagram with the following caption: "Fail[sic] to get a bag of body glove. Enjoy the design of a variety of opportunities available at the store in the country, or order online at web site bgt4u.com Category Jewelry (Jewelry). #bgaccessories #bodygloveth #bodyglovethailand #caps." Upon information and belief, over 1,000 users of Instagram viewed that posting and at least 560 user accounts "liked" that post.  A similar post was made for slingbags on May 17, 2017, wherein IP Global directed its customers to purchase bags in store or "click online [] website. www.bgt47.com." Upon information and belief, at least 366 separate Instagram user accounts "liked" that post.  The same can be said about a May 3, 2017 promotional post for Body Glove hats, which at least 567 user accounts on Instagram have liked. Body Glove continues to investigate other instances of unauthorized advertising and promotion.

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

e.  In violation of Paragraph 4(c) (under the 2011 Amendment), IP Global has failed to implement the required design and style corrections for products that it has submitted to Body Glove for approval.  For those products that IP Global has submitted to Body Glove for approval that do not meet Body Glove's standards, Body Glove timely responds by identifying necessary design, style, quality, and color modifications.  IP Global has not only failed to respond to those modification demands and re-submit the appropriate designs (as required by Paragraph 4), but it has proceeded to sell the very products that Body Glove determined must first be modified and re-submitted for approval.

f.  In violation of Paragraph 4(d) of the original 1988 License Agreement, IP Global has failed to use its best efforts to ensure that the "Licensed Products" satisfy Body Glove's standards. Rather, as set forth herein, IP Global has sold, and continues to sell, products that IP Global has not presented to Body Glove for approval and/or that Body Glove has not approved for sale as a Licensed Product.  Those products include, without limitation, bags, other accessories, and apparel.

g.  In violation of Paragraph 14(a)-(b) of the original 1988 License Agreement, IP Global has, upon information and belief, authorized a sub-licensee in Thailand, "BGT Corporation PCL," to profit from trademarks not authorized under the 1988 License Agreement.  BGT Corporation PCL is a publicly traded company that sells on the Stock Exchange of Thailand, demonstrating the severity of this contractual breach and trademark infringement.

27.    On May 17, 2017, consistent with Paragraph 18 of the 1988 License Agreement, Body Glove provided IP Global with a Notice of Default.  IP Global,

31

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

1  however, has refused and failed, and continues to refuse and fail, to cure its defaults
2  within a reasonable time.

3      28.   Significantly, the above-identified contract breaches and trademark
4  infringements involve the sale, distribution, advertising, and sublicensing of products
5  and trademarks that (i) IP Global has not submitted to Body Glove for approval and
6  (ii) IP Global has concealed from Body Glove. Therefore, Body Glove has
7  discovered those breaches only recently, during on-site inspections in various Asian
8  territories. Upon information and belief, through further investigation, Body Glove
9  expects to discover additional breaches concerning IP Global's failure to properly
10  self-report, submit products for approval, and comply with the provisions of the 1988
11  License Agreement. Once Body Glove obtains such information, Body Glove
12  reserves the right to amend its Counter-Claims, to the extent appropriate, or pursue
13  other relief in accordance with its rights under the 1988 License Agreement and
14  California and Federal law.

15  **The 1996 License Agreement and IP Global's Breach**

16      29.   IP Global is also in breach and default of a separate but similar License
17  Agreement that the parties' predecessors-in-interest entered into on September 25,
18  1996. That License Agreement, as amended, is herein referred to as the "1996
19  License Agreement." On January 1, 2008, IP Global and Body Glove amended the
20  1996 License Agreement through "a writing signed by the parties" pursuant to
21  Paragraph 13(e). A true and correct copy of said License Agreement, as amended, is
22  attached hereto as Exhibit B. Whereas the 1988 License Agreement covers extensive
23  territories throughout Asia, the 1996 License Agreement is exclusive to Japan.

24      30.   Pursuant to the 1996 License Agreement, and in express recognition that
25  the increasing value of the Body Glove trademarks, IP Global is required to pay to
26  annual Minimum Performance Guarantees to Body Glove based on an agreed-upon
27  schedule, as follows:

28         a.  2011: $575,000

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

b. <u>2012</u>: $600,000

c. <u>2013</u>: $600,000

d. <u>2014</u>: the greater of $650,000 or 70% of the collective average of the royalty revenue generated from 2009 through 2013;

e. <u>2015</u>: the greater of $650,000 or 70% of the collective average of the royalty revenue generated from 2009 through 2013; and

f. <u>2016</u>: $675,000 or 70% of the collective average of the royalty revenue generated from 2009 through 2013.

31.     The above-identified Minimum Performance Guarantees are binding, and have not been modified.

32.     To date, IP Global has failed to pay Body Glove the full amounts owed thereunder, from 2011 through the present.  Body Glove has issued two Notices of Default on April 25 and May 17, 2017, respectively, outlining the amounts of the outstanding sums, and providing IP Global with a reasonable time to cure.  In violation of the 1996 Agreement, however, IP Global has failed to cure the default, and remains in default and continuing breach.

33.     As further proof of IP Global's delinquency and contractual failings, Body Glove has recently discovered that IP Global is in violation of various quality control provisions of the 1996 Agreement.  Body Glove continues to investigate those breaches, and reserves the express right to either amend its Counter-Claims to include those violations or initiate a separate suit when such information becomes available to Body Glove.  Body Glove is exercising reasonable diligence in investigating those breaches, but such misconduct and trademark infringements are difficult to discover in large part due to (i) IP Global's repeated, albeit false and misleading, assurances that it has complied with the Approval Protocols; (ii) IP Global's failure to advise Body Glove that it is selling products without the appropriate approval, in violation of the approval protocols; and (iii) geographical limitations preventing and/or inhibiting Body Glove from examining the breaches

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20ᵀᴴ FLOOR
SHERMAN OAKS, CALIFORNIA 91403

taking place throughout several territories in Asia.

## FIRST CLAIM FOR RELIEF

### (Breach of 1988 Licensing Agreement Against All Defendants)

34.    Body Glove incorporates by reference Paragraphs 1 through 33 of this Counter-Claim, as if set forth in full herein.

35.    Body Glove and IP Global are valid assignees to the 1988 License Agreement, as confirmed by the January 1, 2011 Amendment, providing that "WHEREAS, the parties confirm that the rights of the License Agreement were assigned to [Body Glove] and [IP Global] respectively." The 1988 License Agreement is binding and fully enforceable, and Body Glove, as a successor-in-interest and valid assignee, has standing to sue for the relief herein.

36.    As set forth more specifically in Paragraph 26, IP Global has violated the 1988 License Agreement.

37.    Consistent with the provisions of the 1988 License Agreement, Body Glove provided IP Global with a Notice of Default on May 17, 2017, identifying those breaches. IP Global has failed to cure the defaults outlined in the Notice of Default within a reasonable time, and continues to be in breach and default of the 1988 License Agreement.

38.    Body Glove has performed all of the obligations, terms and conditions to be performed by it other than those that have been excused or waived by IP Global's breach of the 1988 License Agreement.

39.    As a direct and proximate result of IP Global's multiple breaches of the 1988 License Agreement, Body Glove has been damaged in an amount according to proof. Body Glove is further entitled to its attorneys' fees and costs, pursuant to 26(c) of the 1988 License Agreement.

STUBBS ALDERTON & MARKILES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

ANSWER TO COMPLAINT AND COUNTERCLAIMS

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

## SECOND CLAIM FOR RELIEF

### (Breach of Implied Covenant of Good Faith and Fair Dealing Against All Defendants)

40.     Body Glove incorporates by reference Paragraphs 1 through 39 of this Counter-Claim, as if set forth in full herein.

41.     The 1988 License Agreement is subject to the implied covenant of good faith and fair dealing, requiring that IP Global act in good faith at all times in its performance of its obligations under the 1988 License Agreement.

42.     Through the acts described herein, IP Global has breached the implied covenant of good faith and fair dealing subject to the 1988 License Agreement. Specifically, in acting as alleged herein, IP Global has induced Body Glove to grant IP Global exclusive rights to license intellectual property belonging to Body Glove, on the express condition that IP Global will comply with certain guarantees to consistently sell and promote products of certain quality and design, as approved by Body Glove.  In refusing to comply with the required quality control and approval provisions in the License Agreements, IP Global has failed, and continues to fail, to act in good faith in its performance of its obligations under the 1988 License Agreement.

43.     As a result, IP Global has interfered, and continues to interfere, with Body Glove's right to receive the benefits of the 1988 License Agreements. IP Global's breach of the implied covenant of good faith and fair dealing has caused IP Global to sell, manufacture, distribute, and advertise products that have not been approved by Body Glove, in contravention of the very heart of the 1988 License Agreement.

44.     As a direct and proximate result of IP's breach of the implied covenant of good faith and fair dealing, Body Glove has been damaged in an amount according to proof.

ANSWER TO COMPLAINT AND COUNTERCLAIMS

45.     Body Glove is further entitled to its attorneys' fees and costs, pursuant to 26(c) of the 1988 License Agreement.

### THIRD CLAIM FOR RELIEF

### (Breach of the 1996 Licensing Agreement Against All Defendants)

46.     Body Glove incorporates by reference Paragraphs 1 through 33 of this Counter-Claim, as if set forth in full herein.

47.     Body Glove and IP Global are parties to the 1996 License Agreement. The 1996 License Agreement is binding and fully enforceable, and Body Glove, as a successor-in-interest and valid assignee, has standing to enforce said Agreement.

48.     As alleged herein, in violation of the 1996 Licensing Agreement, IP Global has failed to pay Body Glove the required Minimum Performance Guarantees.

49.     Consistent with the 1996 License Agreement, on April 25 and May 17, 2017, Body Glove provided IP Global with Notices of Default outlining IP Global's breach. IP Global has failed to cure the defaults outlined in the Notice of Default, and continues to be in breach and default of the 1996 License Agreement.

50.     Body Glove has performed all of the obligations, terms and conditions to be performed by it other than those that have been excused or waived by IP Global's breach of said License Agreement.

51.     As a direct and proximate result of IP's breach of the License Agreement, Body Glove has been damaged in an amount according to proof, no less than $1,474,969.  Under the terms of the 1996 License Agreement, Body Glove is entitled to all Minimum Performance Guarantees provided therein.

### FOURTH CLAIM FOR RELIEF

### (Breach of Implied Covenant of Good Faith and Fair Dealing Against All Defendants)

52.     Body Glove incorporates by reference Paragraphs 1 through 33 and 46 through 51 of this Counter-Claim, as if set forth in full herein.

53.     The 1996 License Agreement is subject to the implied covenant of good

36

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20ᵗʰ FLOOR
SHERMAN OAKS, CALIFORNIA 91403

faith and fair dealing, requiring that IP Global act in good faith at all times in its performance of its obligations under the 1996 License Agreement.

54.    Through the acts described herein, IP Global has breached the implied covenant of good faith and fair dealing subject to the 1996 License Agreement. Specifically, in acting as alleged herein, IP Global has induced Body Glove to grant IP Global exclusive rights to license intellectual property belonging to Body Glove, on the express condition that IP Global will comply with certain performance guarantees.  In refusing to comply with the required provisions in the License Agreement, as alleged herein, IP Global has failed, and continues to fail, to act in good faith in its performance of its obligations under the 1996 License Agreement.

55.    As a result, IP Global has interfered, and continues to interfere, with Body Glove's right to receive the benefits of the 1996 License Agreement. IP Global's breach of the implied covenant of good faith and fair dealing has caused IP Global to sell, manufacture, distribute, and advertise products without the proper pre-conditions and agreed-upon terms, in contravention of the very heart of the 1996 License Agreement.

56.    As a direct and proximate result of IP's breach of the implied covenant of good faith and fair dealing, Body Glove has been damaged in an amount according to proof.

## FIFTH CLAIM FOR RELIEF

### (Preliminary and Permanent Injunctive Relief Against All Defendants)

57.    Body Glove incorporates by reference Paragraphs 1 through 56 of this Counter-Claim, as if set forth in full herein.

58.    By its misconduct alleged hereinabove, IP Global has caused, and continues to cause, immediate and irreparable losses to Body Glove, stemming from its inadequate performance of the 1988 License Agreement.  IP Global's actions in connection with the 1988 License Agreement have impaired, and are continuing to impair, the value of the Body Glove brand and Body Glove's ongoing and

prospective business relationships with its vendors, licenses, investors, and strategic partners.  Specifically, several retailers, investors, and/or strategic partners have advised Body Glove that they are not interested in pursuing business opportunities with Body Glove in countries in which IP Global has exclusive licensing rights, based on stated concerns regarding brand cohesion.  Additionally, IP Global's misconduct continues interfere with Body Glove's relationship with its customers in Asia. These damages are not compensable in money damages alone.

59.     Accordingly, Body Glove is entitled to immediate preliminary and permanent injunctive relief, compelling IP Global to comply with the contractual and obligations provided under the 1988 License Agreement, and to cease continuing to interfere with, and disrupt, Body Glove's licensing partners and ongoing business relationships.

### SIXTH CLAIM FOR RELIEF

### (Declaratory Relief Against All Defendants)

60.     Body Glove incorporates by reference Paragraphs 1 through 56 of this Counter-Claim, as if set forth in full herein.

61.     An actual controversy exists between the parties with respect to the parties' rights and obligations under the 1988 and 1996 License Agreements, in that Body Glove contends that, as the result of IP Global's failure to cure the breaches alleged herein within a reasonable time, IP Global is in default of the 1988 and 1996 License Agreements and the 1988 and 1996 License Agreements are terminated. Upon information and belief, IP Global contends that it is not in breach of the 1988 and/or 1996 License Agreements, and said Agreements remain effective.

62.     Accordingly, Body Glove seeks a judicial declaration confirming that IP Global is in material breach and default of the 1988 and 1996 License Agreements, and that both License Agreements have been effectively terminated.

63.     Further, pursuant to Paragraph 19(e) of the 1988 License Agreement, Body Glove is contractually entitled to "liquidated damages in the amount of the

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20ᵗʰ FLOOR
SHERMAN OAKS, CALIFORNIA 91403

Minimum Annual Combined Payment for the Contract Year in which such termination occurs, and the Minimum Annual Combined Payment for the next succeeding Contract Year, if any." As provided by Paragraph 19(e), "[t]he parties hereby agree that these amounts comprise a reasonable estimate of the damages that [Body Glove] would suffer as a result of such termination for cause, that the amount of actual damages would be impossible or extremely difficult to calculate, and that these liquidated damages are not in the nature of a penalty."

64.     An actual controversy exists between the parties with respect to Paragraph 19(e), in that Body Glove contends that the 1988 License Agreement has been terminated and that IP Global is therefore required to pay the amounts outlined in Paragraph 19(e). Upon information and belief, IP Global contends that it is not in breach of the 1988 License Agreement, and is not required to pay the amounts identified in Paragraph 19(e).

65.     A judicial declaration is necessary and appropriate at this time so that the parties may determine their rights and duties under the 1988 License Agreement.

## SEVENTH CLAIM FOR RELIEF

### (Contributory Trademark Infringement Against All Defendants)

66.     Body Glove incorporates by reference Paragraphs 1 through 56 of this Counter-Claim, as if set forth in full herein.

67.     As set forth herein, IP Global has, upon information and belief, intentionally authorized and induced its current sub-licensee in Thailand, "BGT Corporation PCL," to profit from the usage of Body Glove's trademarks and other Body Glove intellectual property not authorized under the 1988 License Agreement. Specifically, upon information and belief, IP Global has willfully and intentionally authorized BGT Corporation PCL to use "BG" in its company name, notwithstanding that the name "BG" constitutes an unauthorized usage of Body Glove's intellectual property. Global BGT Corporation PCL is a publicly traded company that sells on the Stock Exchange of Thailand, demonstrating the severity of this trademark

ANSWER TO COMPLAINT AND COUNTERCLAIMS

1    infringement.

2    68.    Upon information and belief, IP Global has received a direct monetary

3    benefit from BGT Corporation PCL's unauthorized usage of Body Glove intellectual

4    property, and has intentionally allowed BGT Corporation PCL to continue to use and

5    profit from the Body Glove trademarks, without authorization.

6    69.    The aforementioned acts of IP Global has caused damages to Body

7    Glove in an amount to be proven at trial.

8    70.    Body Glove is being irreparably injured.  Such irreparable injury will

9    continue unless IP Global is preliminarily and permanently enjoined by this Court

10   from further violations of Body Glove's protected intellectual property rights, for

11   which Body Glove has no adequate remedy at law.

12   ## EIGHTH CLAIM FOR RELIEF

13   ## (Infringement of a Registered Trademark Section 32(1) of the Lanham Act, 15

14   ## U.S.C. §1114(1) Against All Defendants)

15   71.    Body Glove incorporates by reference Paragraphs 1 through 56 of this

16   Counter-Claim, as if set forth in full herein.

17   72.    Without authorization from Body Glove, IP Global is using interstate

18   commerce and is using and infringing Body Glove's trademarks without

19   authorization from Body Glove in connection with the promotion and sale of apparel,

20   accessories, and other fashion items, as alleged herein.

21   73.    IP Global's conduct is likely to have caused, and will continue to cause,

22   confusion and mistake among consumers and others as to the source, origin, or

23   sponsorship of IP Global's products.  Specifically, through such trademark

24   infringements, IP Global has falsely misled customers to believe that Body Glove has

25   endorsed, authorized, and approved all products bearing Body Glove trademarks that

26   IP Global manufactures, distributes, sells, and advertises, which is not the case.

27   74.    IP Global's conduct is willful and an intentional violation of Body

28   Glove's intellectual property rights and protections.

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

40

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

75.    IP Global's conduct constitutes trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

## NINTH CLAIM FOR RELIEF

**(False Designation 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A)**
**Against All Defendants)**

76.    Body Glove incorporates by reference Paragraphs 1 through 56 of this Counter-Claim, as if set forth in full herein.

77.    IP Global's actions, as described above and as alleged herein, are likely and will continue to cause confusion or mistake or to deceive as to the origin, sponsorship, or approval of IP Global, its products and commercial activities by or with Body Glove, and thus constitute trademark infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

## TENTH CLAIM FOR RELIEF

**(Common Law Trademark Infringement Against All Defendants)**

78.    Body Glove incorporates by reference Paragraphs 1 through 56 of this Counter-Claim, as if set forth in full herein.

79.    By way of Body Glove's continuous use and promotion of its trademarks, as well as the distinctiveness of those marks, consumers associate and recognize the marks as representing a single source or sponsor or approver of goods, and therefore Body Glove's trademarks are protectable at common law.

80.    Body Glove owns and enjoys common law trademark rights, as more specifically set forth in the 1988 License Agreement, which rights are superior to any rights that IP Global may claim in and to those trademarks with respect to the products that IP Global sells and promotes that bear the Body Glove brand without approval from Body Glove.  Body Glove's trademarks are inherently distinctive and have acquired secondary meaning with the trade and consuming public, and/or have become distinctive in the minds of customers, in that Body Glove's trademarks are

STUBBS ALDERTON & MARKLES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

41

STUBBS ALDERTON & MARKILES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

associated with Body Glove.

81.     IP Global's use of Body Glove's trademarks in connection with the advertising, distribution, marketing, promotion, offer for sale, and/or sale of such products that Body Glove has not approved (as alleged in Paragraph 26) is likely to cause confusion, and upon information and belief, has caused confusion as to the nature, quality, and consistency of Body Glove's products, in that customers will be likely to associate or have associated such products as originating with Body Glove all to the detriment of Body Glove.

82.     By reason of IP Global's actions alleged herein, Body Glove has suffered and will continue to suffer, irreparable injury to its rights, and has suffered, and will continue to suffer, substantial loss of goodwill and loss in the value of Body Glove's trademarks, unless and until IP Global is enjoined from continuing its wrongful acts.

83.     By reason of IP Global's actions alleged herein, Body Glove has been damaged in an amount not presently ascertained, and such damage will continue and increase unless and until IP Global is enjoined from continuing its wrongful acts.

## PRAYER FOR RELIEF

WHEREFORE, Counter-Claimant, Body Glove, prays for Judgment against Counter-Defendant as follows:

1.     For an award of compensatory damages according to proof;

2.     For an award of attorneys' fees and costs pursuant to Paragraph 26(c) of the 1988 License Agreement;

3.     For an order temporarily, preliminarily, and permanently enjoining IP Global, and its employees, agents, sub-licensees, and anyone acting in concert or participation with it, from engaging in any of the unlawful acts alleged herein, including the unauthorized appropriation of the registered trademarks belonging to Body Glove and the manufacturing, selling, distributing, or advertising products that have not been approved

by Body Glove;

4.     For a judicial declaration confirming that IP Global is in material default of the 1988 and 1996 License Agreements, and that said Agreements are terminated;

5.     For a judicial declaration confirming that Paragraph 19(e) of the 1988 License Agreement is enforceable, and that Body Glove is entitled to the damages contained therein;

6.     For punitive, enhanced, and exemplary damages, pursuant to 15 U.S.C. § 1117 and California Civil Code § 3294 for IP Global's willful infringement of Body Glove's trademark rights, and for the contributory infringement by Body Glove's sub-licensees;

7.     For a judgment declaring that IP Global has violated and willfully violated the provisions of 15 U.S.C. § 1125(a) by falsely designating the origin of its products and that its products have been approved for sale by Body Glove;

8.     The costs of the suit incurred herein; and

9.     Such other and further relief as the Court deems just and proper.

## **REQUEST FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Counter-Defendant demands a trial by jury of all issues raised by the pleadings which are so triable.

Dated: October 16, 2017         **STUBBS ALDERTON & MARKILES, LLP**

By: _____
      Jeffrey F. Gersh
      Neil Elan
      Attorneys for Defendants Body Glove IP
      Holding, LP and Marquee Brands, LLC

STUBBS ALDERTON & MARKILES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

43

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California, 91403.

On October 16, 2017, I served the foregoing documents described as: **ANSWER TO COMPLAINT AND COUNTERCLAIM REQUEST FOR JURY TRIAL** on all interested parties to this action as follows:

Michael M. Amir
Jason B. Baim
Doll Amir & Eley, LLP
1888 Century Park East, Suite 1850
Los Angeles, CA 90067
Tel: (310) 557-9100
mamir@dollamir.com
jbaim@dollamir.com

☒ **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF") FRCP, Rule 5(b)(2)(E)** (Pursuant to controlling General Order(s) and Local Rule(s) ("LR"), the foregoing document will be served by the court via NEF and hyperlink to the document to counsel at the email address(s) listed above.

☐ **BY E-MAIL:** I caused the above-referenced document to be transmitted via e-mail from hcory@stubbsalderton.com to

☐ **(BY OVERNIGHT CARRIER)** I caused the above-referenced document to be transmitted via FedEx to counsel at the address listed on the attached service list.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 16, 2017, at Sherman Oaks, California.

_____
HEATHER CORY

STUBBS ALDERTON & MARKILES, LLP
15260 VENTURA BLVD.
20TH FLOOR
SHERMAN OAKS, CALIFORNIA 91403

PROOF OF SERVICE