# United States District Court
# Central District of California

| | |
|---|---|
| IP GLOBAL INVESTMENTS AMERICA, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>BODY GLOVE IP HOLDINGS, LP, and MARQUEE BRANDS LLC<br><br>    Defendants. | Case No. 2:17-cv-06189-ODW (AGR)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [67, 68, 105] AND DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [70]** |

## I. INTRODUCTION

Plaintiff IP Global Investments America, Inc. ("IP Global" or "IPG") and Defendants Body Glove IP Holdings, LP and Marquee Brands, LLC (collectively, "BGH") each move for partial summary judgment in this breach of licensing agreement/trademark infringement action. (IP Global's Mot. for Partial Summ. J. ("IPG MPSJ"), ECF Nos. 67, 68, 105; BGH's Mot. for Partial Summ. J. ("BGH MPSJ"), ECF No. 70.) For the reasons discussed below, the Court **GRANTS, IN PART**, IP Global's MPSJ (ECF Nos. 67, 68, 105), and **DENIES** BGH's MPSJ (ECF No. 70).[1]

---

[1] After carefully considering the papers filed in support of and in opposition to the motions, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[2]

This action involves a license agreement between IP Global and BGH, executed originally in 1988 by the parties' predecessors in interest. (IPG Separate Statement of Uncontroverted Facts ("IPGUF") No. 1, ECF No. 67; Decl. of Michael M. Amir ("Amir Decl.") ¶¶ 2–3, Exs. 1 (1988 Agreement), 2 (2011 Amendment), ECF No. 67-2.) The Agreement as amended ("Agreement") grants IP Global exclusive rights to "design, manufacture, distribute, advertise, and sell licensed Body Glove products in certain Asian markets." (IPGUF No. 1.) It automatically renews for continual, successive ten-year periods, provided that IP Global has paid certain royalties and is not in "uncured material breach." (*Id.* at No. 3.) The Agreement authorizes IP Global to sub-license rights granted under the Agreement, which, as is relevant to this matter, IP Global has done with companies in Thailand and Malaysia. (*Id.* at Nos. 6–7; BGH Additional Uncontroverted Facts ("BGHUF") No. 63, ECF No. 103-1.) The Agreement includes an approval process through which IP Global obtains approval for use of the Body Glove mark ("Approval Protocol"). (IPGUF Nos. 14–17; BGHUF No. 63.) The Agreement also includes a provision entitled "Breach and Cure." (IPGUF No. 4.) The Breach and Cure provision provides:

> a. In the event of any breach of this Agreement, the party alleging such breach shall give written notice of the breach to the breaching party, and shall specify a reasonable period of time within which the breaching party is to cure the breach.
>
> b. In the event that said breach has not been cured within the specified period, the first party may terminate this Agreement upon written notice to the breaching party. Termination shall be effective upon receipt of the written notice.

(Amir Decl. Ex. 1, § 18.)

On or about October 31, 2016, BGH acquired a 75% interest in the Body Glove brand and became the successor-licensor of the Agreement. (IPGUF No. 28; BGH Opp. to IPG MPSJ ("BGH Opp.") 10, ECF No. 103.) BGH contends that, following

---
[2] The Court addresses only those facts necessary to resolve the instant motions.

2

its acquisition, it learned that IP Global had breached, and continued to breach, the Agreement. (*Id.*) On May 17, 2017, BGH sent IP Global a written Notice of Default stating, among other things, that IP Global was in default of the Agreement for failure to adhere to the Approval Protocol. (*Id.*; BGHUF No. 82; Amir Decl. ¶ 23, Ex. 21 ("Notice of Default").) In communications between the parties before and after BGH sent the Notice of Default, IP Global requested that BGH identify the specific instances of noncompliance so that IP Global could take corrective action. (IPG Reply 11, ECF No. 110-1; Amir Decl. Ex. 20; Decl. of Michael Neuman ("Neuman Decl."), Ex. 3, ECF No. 103-3.) In subsequent letters, BGH informed IP Global that it deemed the Agreement terminated "based on [IP Global's] failure to cure the material breaches identified in the notices of default." (IPG Reply in Supp. of IPGUF ("IPG-RUF") Nos. 97–98; Suppl. Decl. of Michael M. Amir ("Suppl. Amir Decl.") Exs. 1–2, ECF No. 107-3.)

IP Global contends that BGH manufactured a default to force IP Global to relinquish rights held under the Agreement. (IPG MPSJ 9–10.) IP Global asserts that BGH threatened IP Global with default, and with informing IP Global's potential buyer of the default, if IP Global did not accept amendments to the Agreement. (IPG MPSJ 16–18.) IP Global argues that BGH's internal documents and emails show that, when IP Global did not acquiesce to BGH's demands, BGH engaged in the "nuclear option" including refusing to approve any new products going forward and declaring that IP Global had breached the Agreement. (IPG MPSJ 9, 16–18; IPGUF Nos. 39–43.)

On August 21, 2017, IP Global brought this action against BGH, asserting seven causes of action: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) and (5) Intentional Interference with Contractual Relations; (4) and (6) Intentional Interference with Prospective Economic Advantage; and (7) Declaratory Relief. IP Global brought its third cause of action against only Defendant Marquee Brands, LLC, but asserted all other claims against both

Defendants. (*See* Compl., ECF No. 1.) On December 18, 2017, Defendant Body Glove IP Holdings, LP[3] counterclaimed against IP Global, asserting eight counterclaims: (1) Breach of Contract; (2) Breach of Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Preliminary and Injunctive Relief; (4) Declaratory Relief; (5) Contributory Trademark Infringement; (6) Trademark Infringement under the Lanham Act; (7) False Designation under the Lanham Act; and (8) Common Law Trademark Infringement. (Am. Answer and Countercl., ECF Nos. 28, 35.)[4]

The parties now cross-move for partial summary judgment as to certain claims and counterclaims. (*See generally* IPG MPSJ; BGH MPSJ.)

### III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact "might affect the outcome of the suit under the governing law," and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

---

[3] Although Defendant Body Glove IP Holdings, LP is the counterclaimant in this action, both parties refer to Defendants collectively or plurally throughout their papers. Accordingly, and for the sake of brevity, the Court refers to Defendants collectively as "BGH."

[4] BGH has withdrawn its seventh counterclaim and voluntarily dismissed its eighth counterclaim. (Withdrawal, ECF No. 136; Final [Proposed] Pretrial Conference Order 2, ECF No. 135-1.)

The moving party bears the initial burden to identify those portions of the record establishing the lack of a genuine issue for trial before the nonmoving party must introduce evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See id.* at 322–23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and self-serving testimony create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. It is not the district court's task "to scour the record" for support to the parties' arguments. *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). The parties bear the obligation to lay out their support clearly. *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out the material facts to which the moving party contends there is no genuine dispute. C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence files in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. EVIDENTIARY ISSUES

Both parties submitted voluminous evidence and objections to evidence. Much of the evidence was unnecessary to the resolution of these motions. As such, the Court need not rule on the admissibility of such evidence at this time. To the extent the Court relies on evidence objected to in resolving the cross-motions without discussion, the relevant objections are **OVERRULED**. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118, 1122 (E.D. Cal. 2006).

## V. IP GLOBAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT [67]

IP Global moves for partial summary judgment on BGH's counterclaims for (1) breach of contract, (2) breach of the implied covenant, (5) contributory trademark infringement, and damages as to certain of BGH's counterclaims. (*See* IPG MPSJ.) BGH opposes, except for the fifth counterclaim, contributory trademark infringement, which BGH agrees to dismiss. (BGH Opp. 21.)

### A. BGH First Counterclaim for Breach of Agreement by IP Global

BGH claims that IP Global breached the Agreement by failing to comply with the approval process required for use of the Body Glove mark. (BGH Opp. 12.) BGH seeks a judicial determination that the Agreement is terminated due to IP Global's breach and has informed IP Global in correspondence that it deems the Agreement terminated based on IP Global's failure to cure. (Am. Answer and Countercl. ¶ 46; Suppl. Amir Decl. Exs. 1–2.)

IP Global contends that the Breach and Cure provision requires written notice of the specific breach and an opportunity to cure before BGH may act on it.[5] (IPG MPSJ 2.) IP Global asserts that BGH's May 17, 2017, Notice of Default failed to comply with the Breach and Cure provision and BGH's breach of contract counterclaim is therefore barred. (*Id.*) BGH responds that the Breach and Cure provision applies only to breaches seeking termination, and not as a condition

---

[5] Due to the Court's disposition, it need not and does not reach IP Global's other arguments as to this counterclaim.

6

precedent to a lawsuit for breach of contract. (BGH Opp. 16.) BGH further contends that, even if the Breach and Cure provision applies to any breach, its Notice of Default was sufficient. (*Id.* at 18.) Accordingly, the Court first interprets the Breach and Cure provision and second, if applicable, the sufficiency of BGH's notice.

### 1. *Breach and Cure Provision*

Contract interpretation is a matter of law, "solely a judicial function" where it does not rely on extrinsic evidence. *Am. Alt. Ins. Corp. v. Superior Court*, 135 Cal. App. 4th 1239, 1245 (2006).[6] "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." Cal. Civ. Code § 1639. Where "contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs." *Am. Alt. Ins. Corp.*, 135 Cal. App. 4th at 1245; *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). "The words of a contract are to be understood in their ordinary and popular sense," unless used in a legal or technical sense or assigned a special meaning. Cal. Civ. Code § 1644. The contract should be taken as a whole, "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." *Id.* § 1641. "Thus, the Court must construe the language of a particular section in the context of the entire agreement and not read individual sections out of context to achieve a result not originally contemplated by the parties." *Echo Film S.r.l v. DigiWorld Studios, Inc.*, No. CV 09-1455-JFW(AGRx), 2010 WL 11508363, at *5 (C.D. Cal. Feb. 17, 2010).

The Breach and Cure provision, section 18 of the Agreement, provides:

> a.  In the event of any breach of this Agreement, the party alleging such breach shall give written notice of the breach to the breaching party, and shall specify a reasonable period of time within which the breaching party is to cure the breach.
>
> b.  In the event that said breach has not been cured within the specified period, the first party may terminate this Agreement upon written notice to the breaching party. Termination shall be effective upon receipt of the written notice.

---

[6] The Agreement is governed by California law. (Amir Decl. Ex. 1, § 23.)

7

(Amir Decl. Ex. 1, § 18.)

A plain reading of subsection (a) applies to "any breach of this Agreement." It does not limit or specify the consequences of noncompliance. Thus, before acting on "any breach," BGH was required to provide written notice and specify a reasonable period of time for IP Global to cure. *See* Cal. Civ. Code § 1436 ("A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed."); *Water, Inc. v. Everpure, Inc.*, No. CV 09-3389-ABC (SSX), 2012 WL 12949368, at *12 (C.D. Cal. Aug. 2, 2012) (finding plain reading of notice and cure provision that was silent as to effect of noncompliance to be a condition precedent to filing claim for breach of contract).

The structure of the Breach and Cure provision supports this reading as well. The separation of subsections 18(a) and 18(b) indicates that the requirement to provide notice and an opportunity to cure in subsection 18(a) is separate and apart from the subsequent option to terminate through written notice in subsection 18(b). This construction indicates the drafter's intent to require notice for "any breach," rather than only those breaches seeking termination. This reading is further supported by considering the Breach and Cure provision in light of the entire Agreement. In contrast to the separated structure of the Breach and Cure provision, other provisions of the Agreement, both in the original 1988 license agreement and the 2011 amendment, link notice to termination in the same breath. (*See* Amir Decl. Ex. 1, § 5 ("Duration": "No alleged default by [Licensee] shall be cause for termination hereof until ninety (90) days following written notice given by [Licensor]") (revised in 2011 amendment); *id.* Ex. 2, § 4(a) ("Guaranteed Annual Minimum Royalties": "[Licensor] may terminate this License Agreement pursuant to the notice provision contained herein.").) Thus, where the drafters intended to specify notice as a prerequisite to termination only, they knew how to do so. *Cf. RLED, LLC v. Dan Good Distrib. Co.*, No. CIV.S-08-851-LKK (DAD), 2008 WL 11389039, at *4 (E.D. Cal. Aug. 29, 2008)

(reasoning that, where some provisions expressly barred suit, a notice-and-cure provision silent as to effect of noncompliance did not).

The cases on which BGH relies are not inconsistent with this interpretation, as those courts interpreted notice and cure provisions linked explicitly to termination. *See Cineblue Internationale Filmproduktionsgesellschaft MbH & Co 1. Beteilgungs KG v. Lakeshore Entm't Grp.*, No. CV 09-02728 RZ, 2010 WL 11508347, at *4 (C.D. Cal. Feb. 18, 2010) ("the parties made explicit that the failure to cure within the notice period did allow Cineblue to terminate the contract"); *Advanced Thermal Scis. Corp v. Applied Materials Inc.*, No. SACV 07-01384-JVS(JWJx), 2008 WL 11338614, at *2 (C.D. Cal. July 1, 2008) (finding the plain language of the "Termination" provision applied when a party sought to terminate because of an alleged breach). Further, the court in *RLED* found the notice-and-cure provision did not bar claims *other than* for breach of contract. *See RLED*, 2008 WL 11389039, at *4.

Finally, even were the Court to conclude that the Breach and Cure provision applies to only those breaches used as a basis for termination, as BGH argues, termination is in fact what BGH seeks. Through its counterclaims, BGH seeks a judicial determination that the Agreement is terminated consequent to IP Global's breach. Further, BGH sent correspondence to IP Global informing IP Global that BGH deems the Agreement terminated as a result of IP Global's breach. The record is clear that BGH seeks termination of the Agreement based on IP Global's alleged default. Accordingly, under either interpretation, BGH was required to comply with the Breach and Cure provision before it could act on any breach, whether it acted by suing for breach of contract or seeking termination of the agreement otherwise.

### 2. *Notice of Default*

As the Court finds the Agreement requires compliance with the Breach and Cure provision before BGH could act on the breach, the question is whether BGH did so before bringing its counterclaim for breach of contract.

IP Global provides evidence that BGH's May 17, 2017, Notice of Default was the first notification of breach it received from BGH or BGH's predecessor-in-interest ("BGI"). (*See* IPGUF Nos. 19–22.) The president and managing member of BGI, Russell Lesser, testified in deposition that, to his knowledge, at no point in time had BGI sent IP Global written notice of any breach. (Amir Decl. Ex. 7.) BGH offers no evidence of notice before May 2017 and fails to refute IP Global's evidence.[7] (*See* BGH Opp. to IPGUF Nos. 19–22.) Accordingly, the Court evaluates the sufficiency of BGH's May 17, 2017, Notice of Default under the Breach and Cure provision.

The purpose of a notice and cure provision is to provide the breaching party an opportunity to cure the breach before litigation or termination of the contract. *See Keysight Tech., Inc. v. Mentor Graphics Corp.*, C 17-1456-SBA, 2017 WL 7310781, at *6 (N.D. Cal. Sept. 28, 2017); *RLED*, 2008 WL 11389039, at *4 (discussing the purpose of a notice and cure provision silent as to effect of noncompliance is typically to provide an opportunity to cure before the non-breaching party has the right to terminate or sue for breach of contract); *see also Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) ("The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court."). Logically, for a notice to fulfill this purpose, it must sufficiently identify the breach at issue such that the breaching party knows what to cure.

The Breach and Cure provision here requires written notice identifying not only "the breach," but also the "reasonable period of time" for IP Global to cure the

---

[7] Responding to IP Global's Statement of Uncontroverted Facts Nos. 19–20, BGH either "disputes, in part," or does not dispute but asserts an "exception" to these facts. BGH's "exceptions" and partial disputes are **OVERRULED** as nonresponsive and irrelevant to the facts at issue. Further, BGH's practice of citing to dozens of exhibits without providing context or purpose is misleading and improper. *See e.g.*, BGH Opp. to IPGUF No. 20 (citing exhibits 14–28 as evidence in support of BGH's asserted "exception"). Having reviewed the fifteen (15) exhibits cited as support to BGH's "exception" to IPGUF No. 20, and disregarding illegible and duplicate exhibits, the Court finds the exhibits nonresponsive and irrelevant to the facts at issue. It is not the district court's task "to scour the record in search of a genuine issue of triable fact." *Keenan*, 91 F.3d at 1278. Counsel bears the responsibility to lay out their support clearly. *Carmen*, 237 F.3d 1031. BGH has failed to do so here.

specified breach. (*See* Amir Decl. Ex. 1, § 18(a).) BGH's May 17, 2017, Notice of Default stated that IP Global had breached the Agreement by "fail[ing] to adhere to the product approval process outlined in the License Agreement." (*Id.*, Ex. 21.) The Notice also stated that IP Global was in "ongoing breach of the product and store opening approval process" and had breached by allowing its Thailand sub-licensee to use a Body Glove mark in its name. (*Id.*)

This Notice fails to identify the specific breach. BGH argues it needed only to notify IP Global that it was in breach, but such vague notice would defeat the purpose to provide an opportunity to cure. Although BGH contends that IP Global already knew about the specific breaches, IP Global's counsel repeatedly requested in writing that BGH identify the breaches and a period of time by which to cure. BGH also argues that the Notice incorporated the Approval Protocol by reference. Even were that true, the Approval Protocol is extensive, identifying procedures for approval of every type of use of the Body Glove mark, "including apparel, labeling, advertising, social media, graphics/signage, building graphics, 'anything else that is intended for the public to see representing Body Glove's imaging and branding', [sic] and '[a]ny item not listed above that incorporates the Body Glove name, trademark, or any other Licensed Rights.'" (BGH Opp. 4; *see also* IPGUF Nos. 14–18; Decl. of Jeffrey F. Gersh ("Gersh Decl."), Exs. 10–12, ECF Nos. 103-14–103-16 (Approval Protocols for 2011, 2014, and 2017).) Without more information specifying which mark-usage BGH contended constituted breach, IP Global had no way to begin to attempt to cure the breach.

Finally, even were the Notice sufficiently specific as to "the breach," nowhere in the Notice does BGH specify "a reasonable period of time within which the breaching party is to cure the breach." BGH argues that IP Global's response letter on June 2, 2017, agreed to cure within 30 days, but this badly misstates IP Global's language. (*See* BGH Opp. 20 ("IP Global will view thirty days as a reasonable time to respond and cure, if appropriate"); Neuman Decl. Ex. 3 ("we will view thirty (30)

days as a reasonable period of time to respond *in the future*" (emphasis added).) Thus, the Notice is deficient for this reason as well.

The terms of the Agreement required BGH to provide written notice of the breaches and specify a reasonable time in which IP Global was provided an opportunity to cure, prior to bringing suit for breach of contract or seeking to terminate the Agreement. Because BGH failed to comply with the Breach and Cure provision of the Agreement, a condition precedent to a breach of contract claim, BGH is barred from asserting a breach of the Agreement. Accordingly, IP Global is entitled to partial summary judgment as to BGH's first counterclaim.

### B. BGH Second Counterclaim for Breach of Implied Covenant of Good Faith and Fair Dealing by IP Global

BGH claims IP Global has breached the implied covenant of good faith and fair dealing. (Am. Answer and Countercl. ¶¶ 35–40.)

"Where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 n.16 (1990), as modified on denial of reh'g (Oct. 31, 2001) (quoting *Kendall v. Ernest Pestana, Inc.*, 40 Cal. 3d 488, 500 (1985)) (citations omitted)). Breach of an express contractual provision is not a prerequisite to a claim for breach of the implied covenant. *Brehm v. 21st Century Ins. Co.*, 166 Cal. App. 4th 1225, 1236 (2008). Rather, "the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990). However, "[i]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be

disregarded as superfluous as no additional claim is actually stated." *Careau*, 222 Cal. App. 3d at 1395.

Here, IP Global argues that BGH's second counterclaim must fail because it relies on the same factual allegations as its breach of contract claim. (IPG MPSJ 24–25.) BGH responds that its counterclaim for breach of the implied covenant goes beyond the allegations supporting its counterclaim for breach of the Agreement. (BGH Opp. 20–21.) BGH asserts two additional grounds on which it contends its second counterclaim relies: (i) IP Global has failed to expand into new territories as BGH contends it must, and (ii) IP Global concealed its breaches of the Agreement from BGH. (*Id.*)

BGH did not raise its expansion theory in its counterclaims. Consequently, BGH may not raise this new theory in opposition to IP Global's motion for partial summary judgment. *See Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 435 & n.19 (9th Cir. 2011) (finding that a party may not defeat summary judgment by raising issues that were not pled in the operative pleading); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings.").

In contrast, BGH's concealment theory is not newly-raised. The word "conceal" or "concealment" appears in BGH's counterclaims twice. (Am. Answer and Countercl. ¶¶ 4 ("IP Global has maliciously concealed its misconduct for years"), 28 ("IP Global has concealed [the contract breaches] from [BGH]").) BGH incorporates these factual allegations by reference into both the first and second counterclaims, so technically the counterclaims each rely on the same factual allegations. However, the Agreement does not expressly prohibit concealment of a breach; instead, it is implied that the parties will act in good faith.

In support of its concealment theory, BGH offers a 2015 email from IP Global to its sub-licensee, BGT, informing it that BGI may soon perform a site visit and reminding BGT of the approval requirements. (*See* BGHUF No. 68; Gersh Decl.

Ex. 18.) BGH also offers deposition testimony of Jenna Meistrel stating that she has a 2017 list of IP Global's mark-usage reflecting non-compliance. (*See* BGHUF No. 80; Gersh Decl. Ex. 33.) BGH argues this evidence demonstrates that IP Global actively concealed its breaches from BGH. (BGH Opp. 21.) The inference appears to be that (i) IP Global's mark-usage was non-compliant in 2017, so it must also have been non-compliant in 2015, and (ii) IP Global forewarned its sub-licensee in 2015 of BGI's potential site visit so that the sub-licensee could conceal its non-compliance.

Taking all inferences in the light most favorable to the non-moving party, a genuine dispute of material fact exists regarding whether IP Global concealed non-compliance. Accordingly, partial summary judgment is not appropriate on this basis.

### C. BGH Fifth Counterclaim for Contributory Infringement

IP Global moves for partial summary judgment on BGH's fifth counterclaim for Contributory Infringement. (IPG MPSJ 26.) BGH "agree[s] to dismiss" this counterclaim and does not oppose. (BGH Opp. 21.) Accordingly, partial summary judgment is appropriate as to BGH's Fifth Counterclaim.

### D. BGH Damages

IP Global moves for partial summary judgment on the issue of BGH's requested damages. (IPG MPSJ 28.) These include compensatory damages, "loss of goodwill and loss in value of the Body Glove trademarks." (*Id.*) IP Global contends that BGH has failed to present evidence sufficient to establish any damages caused by IP Global's alleged conduct. (*Id.*) BGH responds that it has produced documents sufficient for BGH's expert to quantify the damages it seeks. (BGH Opp. 23.) Of BGH's remaining counterclaims, only BGH's second counterclaim for breach of the implied covenant of good faith and fair dealing requires BGH to establish damages.[8]

---

[8] BGH has withdrawn its seventh counterclaim and voluntarily dismissed its eighth counterclaim. The Court grants partial summary judgment as to BGH's first and fifth counterclaims. BGH's sixth counterclaim for statutory trademark infringement under the Lanham Act does not require BGH to establish damages. *See Brookfield Commc'ns, Inc., v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999) (noting trademark infringement elements under 15 U.S.C. § 1114(1), which do not include damages).

Consequently, the Court considers the issue only as it relates to BGH's second counterclaim.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As to the element of damages, it is "uncertainty as to the *fact* of damage, rather than its amount, [which] negatives the existence of a cause of action." *Berg v. First State Ins. Co.*, 915 F.2d 460, 465 (9th Cir. 1990) (quoting *Walker v. Pac. Indem. Co.*, 183 Cal. App. 2d 513, 517 (1960)). "Summary judgment is appropriate where [a party has] no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages." *Weinberg v. Whatcom Cty.*, 241 F.3d 746, 751 (9th Cir. 2001) (quoting *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988).

BGH appears to concede that an expert is necessary to determine its damages in this matter. (BGH Opp. 23 (noting the documents it produced will allow *its expert* to determine damages).) However, BGH fails to offer an expert report as to damages or to identify its damages expert. Instead, BGH relies on a scrum of documents it contends are sufficient for its expert to calculate the damages it seeks. (*See* BGHUF Nos. 90, 92; Gersh Decl. Exs. 29, 31; Amir Decl. Exs. 12, 13.) IP Global objects to BGH's proposed evidence as unauthenticated, irrelevant to the issue, and inadmissible hearsay. (IPG Reply 13; IPG Reply Mem. of Objs. to Evid. Filed by BGH 3–4, ECF No. 107-2.)[9]

A party may "authenticat[e] or identif[y] an item of evidence" by "produc[ing] evidence sufficient to support a finding that the item is what the proponent claims it

---

[9] BGH filed a sur-reply "Response" to IP Global's Objections. (ECF No. 109.) BGH did not obtain permission to file its sur-reply. *See* C.D. Cal. L.R. 7-10 ("Absent prior written order of the Court, the opposing party shall not file a response to the reply."). Accordingly, the Court **STRIKES** BGH's Response. (ECF No. 109.)

is." Fed. R. Evid. 901(a). "Documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent." *Welenco, Inc. v. Corbell*, 126 F. Supp. 3d 1154, 1163 (E.D. Cal. 2015) (quoting *Anand v. BP W. Coast Prods. LLC*, 484 F. Supp. 2d 1086, 1092 (C.D. Cal. 2007)).

BGH relies on documents produced during discovery by both parties to support its damages claims. BGH submits exhibits 29 and 31 via the Gersh Declaration, which states that the documents are true and correct copies of documents produced by BGH (Ex. 29) or IP Global (Ex. 31) in discovery. (*See* BGHUF No. 90; Gersh Decl. ¶¶ 22, 24.) BGH also relies on two exhibits IP Global submitted via the Amir Declaration. (*See* BGHUF No. 90; Amir Decl. Exs. 12, 13.) The Amir Declaration states exhibits 12 and 13 were identified in the attached deposition testimony. (*See* Amir Decl. ¶¶ 14, 15.) Thus, each of the four exhibits on which BGH relies to establish damages was produced by a party during discovery, as further evidenced by the Bates-stamped pages. Given the "leniency with which courts treat evidence offered by the nonmoving party in summary judgment," this is sufficient for purposes of summary judgment. *Welenco*, 126 F. Supp. 3d at 1163 (citing *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979)).

As for relevance, the Gersh Declaration describes exhibit 29 as "financial documents" produced by BGH and exhibit 31 as "net royalties reports" produced by IP Global. (Gersh Decl. ¶¶ 22, 24.) The Amir Declaration describes exhibit 12 as the "Asset Purchase Agreement" and exhibit 13 as the "Amended and Restated Operating Agreement of Body Glove Holdings, LLC," both dated October 31, 2016. (Amir Decl. ¶¶ 14, 15.) The documents are relevant to the value of the Body Glove brand and mark, which are of significance to the question of whether BGH suffered damages.

Finally, exhibit 29 does appear to contain hearsay. However, its contents could be presented in an admissible form at trial. As such, the Court may consider it on a

summary judgment motion. *See Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."); *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003) (discussing that the focus is on the admissibility of the evidence's content, rather than its form, at the summary judgment stage).

Although the question is close, the Court must view all inferences in the non-moving party's favor. Doing so, it finds that BGH has produced documents from which an expert could fairly estimate damages. Thus, a genuine issue of material fact exists regarding the issue of BGH's damages, and partial summary judgment is not appropriate.

### E. Conclusion for IP Global's Motion for Partial Summary Judgment

For the reasons above, the Court **GRANTS, IN PART**, partial summary judgment to IP Global on BGH's first and fifth counterclaims, and **DENIES, IN PART**, partial summary judgment as to all other requested relief. (ECF No. 67.)

### VI. BGH'S MOTION FOR PARTIAL SUMMARY JUDGMENT [70]

BGH moves for partial summary judgment on IP Global's claims (3) and (5) for Intentional Interference with Contractual Relations and (4) and (6) for Intentional Interference with Prospective Economic Advantage. (BGH MPSJ, ECF Nos. 70–82, 90, 91, 94.) IP Global opposes. (IPG Opp. to BGH MPSJ, ECF No. 104.)

On summary judgment, the moving party bears the initial responsibility to establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. It is not the district court's task "to scour the record" for support to the parties' arguments. *Keenan*, 91 F.3d at 1279. The parties bear the obligation to lay out their support clearly. *Carmen*, 237 F.3d at 1031 (concluding that evidence supporting summary judgment papers should be "set forth in the . . . papers with adequate references so that it could conveniently

be found."). Courts should act "with caution in granting summary judgment" and may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255 (citing *Kennedy v. Silas Mason Co.*, 334 U.S. 249, [257] (1948)).

After careful review, the Court finds that BGH's supporting facts and evidence are indecipherable and disorganized to an extent precluding summary judgment. Specifically, on BGH's papers, the Court cannot conclude that BGH has carried its burden on summary judgment to establish *either* that no genuine dispute of material fact exists *or* that BGH is entitled to judgment as a matter of law.[10] Consequently, partial summary judgment is not appropriate and the Court **DENIES** BGH's MPSJ.

---

[10] For example, BGH filed two notices of errata noting missing exhibits or portions of exhibits and correcting or amending BGH's statement of uncontroverted facts. BGH's errata stated that it was correcting citations in its statement of uncontroverted facts, but in addition to the "corrections," BGH also improperly added new citations. Even the "corrected" citations remain unclear, and the cited evidence is sometimes missing or inaccurate. (*See, e.g.*, Errata Statement of Uncontroverted Facts No. 15, ECF No. 90 (citing Decl. of Christian Niera ("Niera Decl."), Ex. L—but the Niera Declaration references only exhibits A, B, and C (ECF No. 76), and of those exhibits, only B appears to have been filed).) Some exhibits were cited but not filed; others were filed only in part; still others were filed but no courtesy copy was provided to the Court. Recognizing BGH experienced technical difficulties e-filing its motion, after BGH filed its second errata, the Court requested BGH to submit complete courtesy copies of BGH's moving and supporting papers to aid the Court in its review. However, even then, BGH failed to provide coherent and reliable supporting materials. It is also difficult for the Court to believe that IP Global had a fair opportunity to oppose the motion for partial summary judgment based on BGH's filings. On this record, the Court cannot find partial summary judgment appropriate.

## VII. CONCLUSION

For the foregoing reasons, the Court **GRANTS, IN PART**, IP Global's Motion for Partial Summary Judgment as to BGH's first and fifth counterclaims, and **DENIES, IN PART**, IP Global's Motion for Partial Summary Judgment as to all other requested relief. (ECF Nos. 67, 68, 105.) The Court **DENIES** BGH's Motion for Partial Summary Judgment. (ECF No. 70.)

**IT IS SO ORDERED.**

November 14, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**